IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMIE L. MORNINGSTAR, | : | |
| | : | Case No. 2:15-cv-3077 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Deavers |
| CIRCLEVILLE FIRE & EMS | : | |
| DEPARTMENT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter is before the Court on the Defendants' Motion for Reconsideration. Defendants request that the Court reconsider its partial denial of the Defendants' previous Motion for Summary Judgement with respect to the Plaintiff's Title VII claims. (ECF No. 54). The Court **DENIES** Defendants' Motion for Reconsideration.

### I. BACKGROUND

On December 11, 2015, the Plaintiff, Amie Morningstar, brought this action against Defendants Circleville Fire Department & EMS Department ("CFD"), City of Circleville, and Marc Zingarelli. (ECF No. 1). Plaintiff alleged, inter alia, causes of action under Title VII for gender discrimination, retaliation, hostile work environment, and sexual harassment. (ECF No. 1). Plaintiff was the first female firefighter in the City of Circleville. (ECF No. 24 at 5). Her claims arise out of the Defendants' actions before and during her employment as a full-time firefighter. (ECF No. 1).

Defendants moved for summary judgement on April 19, 2017. (ECF No. 17). After oral argument on that motion, the Court requested additional briefing regarding whether the Plaintiff's federal discrimination claims should be dismissed for a failure to exhaust

1

administrative remedies. (ECF No. 31). Both parties submitted supplemental briefs and reply briefs on this issue. (ECFs Nos. 32-35). The Court then granted in part and denied in part the Defendants' Motion for Summary Judgement. (ECF No. 36). Specifically, the Court denied summary judgment on the Plaintiff's federal discrimination claims against the City of Circleville and CFD. (ECF No. 36 at 39-40). The Court found that Defendants were estopped from arguing that Plaintiff's failure to exhaust her administrative remedies should result in dismissal of her Title VII claims (ECF No. 36 at 13). Defendants now move for the Court to reconsider its decision to apply equitable estoppel against them. (ECF No. 54).

## II. LEGAL STANDAND

Under Federal Rule of Civil Procedure 59(e), a court will reconsider its own prior decision "if the moving party demonstrates: (1) a clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.*, 288 F. Supp. 2d 895, 900 (S.D. Ohio 2003). Courts may also alter or amend a judgment when necessary "to prevent manifest injustice." *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Reconsideration due to a finding of manifest injustice or a clear error of law requires "unique circumstances," such as complete failure to address an issue or claim. *McWhorter v. ELSEA, Inc.*, No. 2:00-CV-473, 2006 WL 3483964, at *2 (S.D. Ohio Nov. 30, 2006) (citing *Collison v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir. 1994)). Even for motions to reconsider interlocutory orders, courts respect the importance of "grant[ing] some measure of finality… and [of] discourag[ing] the filing of endless motions for reconsideration" in applying the relevant criteria. *Id.* A motion under Rule 59(e) may not be brought to relitigate issues previously considered by the Court or to present evidence that could

have been raised earlier. *See J.P. v. Taft*, No. C2-04-692, 2006 WL 689091, at *3 (S.D. Ohio Mar. 15, 2006).

### III. ANALYSIS

Defendants argue that "this Court's decision that the doctrine of equitable estoppel excused Plaintiff's failure to exhaust her administrative remedies under Title VII was a clear error of law" and that therefore this Court should reconsider its denial of summary judgment on Plaintiff's Title VII claims. (ECF No. 54 at 2). This Court does not agree. The Court has already considered all issues which Defendants now raise and maintains that it properly applied equitable estoppel in its previous order.

The present motion does not rely on any evidence that was unavailable to the Defendants at the time of their supplemental brief, nor does it rely on any intervening change in the governing law. Rather, Defendants argue that this Court committed a clear legal error by applying equitable estoppel to prevent Defendants from raising the Plaintiff's failure to exhaust her administrative remedies. (ECF No. 54 at 2). To receive reconsideration based on a clear error of law alone, Defendants must show "unique circumstances" such as a court's total failure to address an issue. *See* 2006 WL 3483964 at *2 (citing *Collison v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir. 1994) (granting reconsideration because the court had failed to address a due process claim)). Defendants have failed to show such circumstances. The Court addressed the exhaustion and estoppel issues in its order on summary judgement (ECF No. 36 at 10-15).

"There must be an end to litigation someday." *Ackerman v. U.S.*, 340 U.S. 193, 211-12 (1950) (denying relief for a petitioner who failed to make a timely appeal). Absent newly discovered evidence or an intervening change in law, once parties have had the opportunity to

submit arguments to the court and the court has examined the surrounding doctrine, it is time for litigation to end – at the trial level at least.  *See McWhorter*, 2006 WL 3483964 at *2.  Such is the case here.

Both parties have presented their arguments regarding the exhaustion requirement through a variety of avenues already.  Defendants argued that the Plaintiff's Title VII claims should be dismissed for failure to exhaust administrative remedies in their motion for summary judgement.  (ECF No. 17 at 8).  Although the Plaintiff's response to that motion did not address the exhaustion argument, the Plaintiff presented relevant counterarguments at the subsequent hearing.  (ECF No. 36 at 11).  Both parties later provided supplemental briefs on this issue as well.  (ECF Nos. 31-35).  The parties, therefore, have already received extensive opportunities to proffer arguments regarding the exhaustion requirement and the equitable exceptions to it.  Now Defendants merely assert that Plaintiff, in failing to exhaust her administrative remedies, did not rely on an affirmative act of the Defendants and had knowledge of the exhaustion requirement because she was represented by counsel.  (ECF No. 54).  However, Defendants had opportunities to present these arguments in their summary judgment motion, at oral argument, and in their supplemental briefs.

In ruling on the Defendants' Motion for Summary Judgment, this Court addressed at length the exhaustion requirement and the equitable exceptions to that requirement.  (ECF No. 36 at 10-15).  Defendants fail to raise any new legal issues that the Court has not previously addressed or considered.  Defendants' arguments in their present motion merely express disagreement with the Court's discussion of the very same issues, particularly with regard to the Court's application of equitable estoppel.  The Court has examined whether equitable estoppel allows for an exception and stands by its determination it does.

Equitable estoppel has two elements: reasonable reliance and detriment. *In re McKenzie*, 225 B.R. 377, 380 (N.D. Ohio 1998). Additionally, as a doctrine grounded in concepts of equity, equitable estoppel is flexible enough to empower courts to rectify and avoid manifest injustice. *See Heckler v. Cmty. Health Servs. Of Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984) ("a hallmark of the doctrine is its flexible application"); *see also Strong v. Ellsworth*, 26 Vt. 366, 373 (1854) ("[T]he doctrine of equitable estoppels lies at the foundation of morals."). Equitable estoppel is "an equitable doctrine invoked to avoid injustice in particular cases." *Heckler*, 467 U.S. at 59.

An examination of the stated purpose of Title VII's exhaustion requirement indicates that the Court's application of equitable estoppel was necessary to prevent manifest injustice in this case. Generally, an employee cannot bring federal discrimination and harassment claims under Title VII until she "file[s] a charge with the [Equal Employment Opportunity Commission (EEOC)] and receives a right-to-sue letter." *Waggaoner v. Carlex Glass Am., LLC*, 682 F. App'x 412, 416 (6th Cir. 2017). However, the stated purpose of this requirement is to "trigger an investigation, which gives notice to the employer of alleged wrongdoing." *Crowder v. Railcrew Xpress*, 557 F. App'x 487, 491 (6th Cir. 2014). The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 445 U.S. 385, 393 (1982). When an employer has received adequate notice of alleged discrimination, harassment, or retaliation that could subject the employer to a federal Title VII claim, equity may require that courts waive the exhaustion requirement. *See Bethel v. Jefferson*, 589 F.2d 631, 644 (D.C. Cir 1978) ("[T]he basic demand ... is that the agency be given sufficient, even if technically flawed, notice of the grievance.").

Here, Plaintiff relied on the Defendants' own internal investigation to put the Defendants on notice of the alleged misconduct. To require the Plaintiff to take the additional step of providing the very same notice via the EEOC would impede the interests of justice. Because Defendants had already received notice, they are not prejudiced by this Court's decision to allow the Plaintiff to bring suit for her Title VII claims. The Plaintiff, on the other hand, would certainly face substantial harm if forced to abandon her efforts before this Court and restart her pursuit of justice in an administrative forum. For these reasons, this Court has not committed a clear error in applying the equitable estoppel doctrine.

Defendants correctly note that courts have imposed the following additional prerequisites before invoking equitable estoppel to excuse a failure to exhaust administrative remedies:

(1) conduct or language amounting to a representation of material fact;

(2) awareness of true facts by the party to be estopped;

(3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;

(4) unawareness of the true facts by the party asserting the estoppel;

(5) and detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 861 (6th Cir. 2007).

Defendants now emphasize the first and fourth requirements. The fact that the Court's ruling on summary judgment did not specifically mention these requirements does not suffice to make reconsideration proper here. In issuing an order, a court that has considered all of a movant's arguments need not explicitly mention each individual argument. *See D.E. v. John Doe*, 834 F.3d 723, 728 (6th Cir. 2016) (upholding a district court's denial of a motion for reconsideration because "although [the district court] did not specifically discuss each of the

6

[movant's] arguments… it did *consider* them when concluding that his claims lacked merit") (emphasis added). Here, this Court's decision not to discuss the specific contours of the doctrine that the Defendants seek to magnify does not mean that the Court failed to consider them. The Court gave due consideration to the Defendants' concerns about the equitable estoppel doctrine after providing opportunity for the Defendants to be heard.

Contrary to Defendants' contention, courts need not always find all relevant prerequisites before imposing equitable estoppel. In *AIG Hawaii Ins. Co. v. Smith*, the Supreme Court of Hawaii explained that equitable estoppel's general requirement of reasonable reliance "on the representation or the conduct of the person sought to be estopped… may be dispensed with in order to prevent manifest injustice." *AIG Hawaii Ins. Co. v. Smith*, 78 Haw. 174, 179 (1995).

Similarly, courts have estopped employers and other defendants from raising a plaintiff's failure to exhaust administrative remedies as a defense when the defendants have received adequate notice of their own alleged wrongdoing. *See Aponte v. Armstrong*, 137 Fed. App'x 414 (2d Cir. 2005). Estoppel may be available even though notice is delivered through a process that, due to no fault of the party to be estopped, fails to satisfy technical requirements for pursuing administrative remedies. *See Loe v. Heckler*, 768 F.2d 409 (D.C. Cir. 1985).

For example, in *Aponte v. Armstrong* the court allowed an inmate to pursue civil rights claims even though he had failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA). *Aponte*, 137 Fed. App'x at 416-17. Rather than following a formal reporting process that would have satisfied the statutory requirements, the inmate "sent multiple 'inmate request forms' and letters" to prison officials prior to bringing suit. *Id.* at 417. Prison officials made no representations that prevented the inmate from exhausting his administrative remedies. *Id.* Officials even briefly provided the inmate with a handbook

7

detailing PLRA exhaustion requirements. *Id.* Nevertheless, the court allowed the inmate's federal claims to proceed because the content of the inmate's internal complaints was enough to put the prison on notice of alleged civil rights violations. *Id.*

In *Loe v. Heckler*, the D.C. Circuit allowed a federal employee's Title VII claims to proceed despite a dispute that the employee, caught in a morass of bureaucratic requirements, had technically failed to exhaust her administrative remedies. *Loe*, 768 F.2d at 422. Noting that "[s]uit thresholds warrant interpretation with sensitivity to Title VII's remedial aims," the court emphasized that excessively technical adherence to exhaustion requirements "would improperly impede the goal of making federal employment free from proscribed discrimination." *Id.* at 417. The court allowed the employee to bring all of her Title VII claims because she had "ensured that [her employer] had notice of [her] grievance[] and a fair opportunity to provide full redress or to attempt an informal accommodation. Title VII requires no more." *Id.* at 418.

In the present case, the Defendants' own investigations provided them with more than adequate notice of the alleged misconduct and the impending Title VII claims. The investigation also created an opportunity for Defendants to provide Plaintiff with informal remedies and accommodations. Defendants failed to do so, and consequently, Plaintiff sought relief from this Court. Defendants have already had one bite at the apple. Equitable estoppel prevents them from having another: Defendants here may not require the Plaintiff to seek redress through the EEOC for the same misconduct that Defendants failed to remedy adequately after their own internal investigation.

Defendants assert that the Sixth Circuit has enforced Title VII's exhaustion requirement even when the defendant employer had notice of the Title VII claims. (ECF No. 54 at 3). However, Defendants fail to cite any case where an investigation – whether conducted internally

or by an administrative agency – had taken place. Defendants principally rely on *Schupbach v. Gates*, No. 11-cv-115, 2011 U.S. Dist. LEXIS 126658 (S.D. Ohio Nov. 2, 2011) and *Lee v. Potter*, No. 3:08cv344, 2010 U.S. Dist. LEXIS 11730 (S.D. Ohio Feb. 10, 2010). (*Id.*). In both *Schupbach* and *Lee*, employees withdrew formal Title VII complaints filed with the EEOC before that agency conducted an investigation that could have fulfilled Title VII's goal of providing particularized notice of misconduct to the employers. LEXIS 11730 at *11; LEXIS 126658 at *11. Both cases dismiss the underlying Title VII claims without discussing whether the defendant employers had received notice because there was no notice to discuss. Therefore, these cases are not illustrative of courts' obligation to interpret "[s]uit thresholds… with sensitivity to Title VII's remedial aims," *Loe*, 768 F.2d at 417, where Title VII's goal of providing notice of wrongdoing has been achieved through non-administrative mechanisms.

Additionally, defendants cite *Leake v. Univ. of Cincinnati*, 605 F.2d 255, 259 (6th Cir. 1979) to support their contention that the Sixth Circuit "requires affirmative representations by the employer that misled a Title VII complainant into missing an EEOC filing deadline." (ECF No. 54 at 4). While it is true that the Sixth Circuit partially relied on the misleading nature of the defendant employer's statements in *Leake*, the court did not go so far as to limit the availability of equitable estoppel to cases where an employee relied on her employer's representations. *Id.* Importantly, the court in *Leake* also reasoned that private "correspondence between [employee] and [employer] clearly put the [employer] on notice that [the employee] was asserting rights pursuant to Title VII and provided the [employer] with the protections which limitation periods are intended to provide." *Id.* The Sixth Circuit left room for courts to consider whether the purpose of Title VII has been satisfied in evaluating equitable exceptions to the exhaustion requirement. The only difference between this Court's use of equitable estoppel here and the

9

Sixth Circuit's application of the same doctrine in *Leake* is that this Court finds that the Plaintiff's reliance on the Defendants' own internal investigation to provide notice was, on its own, sufficient to subject Defendants to estoppel.

Federal courts consistently emphasize the importance of vindicating the purpose of Title VII. That emphasis, coupled with the inherent flexibility of equitable estoppel, demonstrate that this Court did not err in denying summary judgment on Plaintiff's Title VII claims. Here, equitable estoppel is necessary to prevent the manifest injustice that would result if Plaintiff were required to exhaust her administrative remedies.

Defendants do not point to any clear legal error in the Court's previous order, and the Court has fully considered the issues giving rise to the supposed error. Therefore, Defendants' Motion for Reconsideration of this Court's application of equitable estoppel is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration (ECF No. 54) is **DENIED**.

**IT IS SO ORDERED.**

                                               s/ Algenon L. Marbley
                                            **ALGENON L. MARBLEY**
                                            **UNITED STATES DISTRICT JUDGE**

**DATED: June 12, 2018**