IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMIE L. MORNINGSTAR, | : | |
| | : | Case No. 2:15-cv-3077 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Deavers |
| CIRCLEVILLE FIRE & EMS | : | |
| DEPARTMENT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter comes before the Court on Defendants' Motions in Limine (ECF Nos. 63-69). The Court issued oral decisions on the motions at the Monday, August 6, 2018 final pretrial conference, but sets forth its reasoning more fully herein. For the reasons that follow, the Court **GRANTS** ECF Nos. 66 and 68, **DENIES** ECF Nos. 63, 65, 67, and 69, and **DENIES** Defendants' request to exclude the report discussed in ECF No. 64, but **WITHOLDS RULING** on admissibility of specific portions of the report.

### I. LEGAL STANDARD

#### A. Motions in Limine

Courts should "exclude evidence on a motion in *limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *Delay v. Rosenthal Collins Grp., LLC*, No. 2:07-CV-568, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012). Thus, "[w]hen a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Id.* Orders in limine which exclude broad categories of evidence should seldom be employed. The better practice is to deal with questions

of admissibility as they arise. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison v. Stephenson*, No. 2:06-CV-283, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008) ("Courts . . . are generally reluctant to grant broad exclusions of evidence *in limine,* because a court is almost always better situated during the actual trial to assess the value and utility of evidence."). "Whether or not to grant a motion in limine falls within the sound discretion of the trial court." *Delay*, 2012 WL 5878873, at *2.

### B. Applicable Rules of Evidence

Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Evidence is relevant, and therefore generally admissible, so long as it "has any tendency to make a fact more or less probable," and so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (internal citation omitted). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant." *Id.* at 401. Additionally, evidence can be relevant even if it does not relate to a fact in dispute, provided the evidence supplies background information about a party or issue. *See* Advisory Committee Notes to 1972 Proposed Rules ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). Assuming evidence is relevant, Rule 403 nonetheless grants trial courts discretion to exclude that evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

As a general rule, evidence that constitutes or contains hearsay is inadmissible, unless an exception to the hearsay rule applies. Fed. R. Evid. 801, 802. Hearsay within hearsay "is not

excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. One exception to hearsay, relevant here, is the exception made for "public records"—statements of a public office that sets out the office's activities, a matter observed while under a legal duty to report, or factual findings from a legally authorized investigation. Fed. R. Evid. 803(8).

Two final evidentiary rules are relevant here. First, Rule 405 allows evidence of a person's character or character trait to be "proved by relevant specific instances of the person's conduct" only when "a person's character or character trait is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). Rule 609 allows evidence of a criminal conviction to be admitted to attack a witness's character under certain circumstances. Fed. R. Civ. 609. Against this backdrop, the Court considers Defendants' Motions.

## II. ANALYSIS

### A. Sarah Hempstead's EEOC Complaint Against the Circleville Police Department (ECF No. 63)

Defendants move to exclude all evidence and testimony regarding the Equal Employment Opportunity Commission (EEOC) complaint that Sara Hempstead filed against the Circleville Police Department. (ECF No. 63). Ms. Morningstar has not filed a response. For the following reasons, Defendants' Motion is **DENIED**.

Ms. Hempstead was a police department employee who brought disability discrimination, gender discrimination, and retaliation claims against the police department while Ms. Morningstar was still employed at the Circleville Fire Department. Defendants argue that Ms. Hempstead's EEOC complaint is irrelevant under Federal Rule of Evidence 401 and would be unduly prejudicial, confusing, or misleading under Federal Rule of Evidence 403. (ECF No. 63 at 3-4). Therefore, they contend the EEOC complaint should be excluded.

Defendant's rely on *Blumensaadt v. Std. Prods. Co.*, 744 F.Supp. 160, 163 (N.D. Ohio 1989), a Title VII employment discrimination and retaliation case. (ECF No. 63 at 3-4). *Blumensaadt* is not controlling here. There, the court merely held that a state unemployment compensation board's decision to extend benefits to the plaintiff employee was not probative of the plaintiff's discrimination allegations. 744 F.Supp. at 163. The court excluded evidence of the board's decision because eligibility for unemployment benefits did not require a finding of discrimination. *Id.*

There is no per se rule requiring the exclusion of "other acts" or "me too" testimony (i.e. testimony from non-parties claiming discrimination by managers who played no role in the alleged discrimination against the plaintiff). *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 380-81, 387 (2008). The relevance of such evidence "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 388.

The Sixth Circuit has provided additional guidance. "Other acts" evidence must be "logically or reasonably tied to the [employment] decision made with respect to [the plaintiff]." *Griffin v. Finkbeiner*, 689 F.3d 584, 598 (6th Cir. 2012) (internal quotation marks and citations omitted). Factors to consider include: "(1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same 'bad actors' were involved in the 'other' conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers within the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees'

allegations." *Schrack v. RNL Carries, Inc.*, 565 F. App'x. 441, 445 (6th Cir. 2014) (citing *Griffin*, 689 F. 3d at 599).

The *Griffin* factors are divided on the admissibility of Ms. Hempstead's EEOC complaint, but the Court finds that on balance, it is not necessary to exclude it at this time. The first factor, whether the evidence is tied to the decision made with respect to Ms. Morningstar, favors exclusion because the police department's decisions regarding Ms. Hempstead do not have any direct logical connection to the Circleville Fire Department's ("CFD") treatment of Ms. Morningstar.

The second and third factors weigh in favor of admissibility. According to Mayor McIllroy's deposition, Ms. Hempstead alleged that the mayor was one of the officials who did not respond to her complaints of gender discrimination and allowed the discrimination to continue.[1] (McIllroy Dep. 57:10-20; ECF No. 80-2 at 4). Ms. Morningstar also made several complaints to Mayor McIllroy about incidents at CFD. As mayor, Mr. McIllroy "was in a position to shape the attitudes, policies, and decisions of the division's managers." *Griffin*, 689 F.3d at 595 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir.1998)). Thus, the second factor, whether the same bad actors were involved, weighs slightly in favor of admissibility. As for the third factor, whether the other acts were in close proximity, Ms. Hempstead and Ms. Morningstar were both employees of the City of Circleville, albeit in different departments. Ms. Morningstar brought this lawsuit in December 2015, and Ms. Hempstead filed her EEOC complaint in April 2015. The geographic and temporal proximity thus weights in favor of admissibility.

---

[1] Ms. Hempstead's EEOC complaint classifies McIllroy as the "HR Director" rather than mayor, (ECF No. 80-2 at 4), but McIllroy's deposition indicates he was mayor at the time, (McIllroy Dep. 7: 4-6).

Factors four and five favor exclusion. In regard to the fourth factor, whether decisionmakers knew of the decisions of others, it is not alleged that Chief Zingarelli or other CFD personnel were aware of the circumstances surrounding Ms. Hempstead's allegations against the police department. Also, at his deposition, Mayor McIllroy indicated that he was not aware of Ms. Hempstead's complaint. (McIllroy Dep. 57: 2-22). As for the fifth factor, whether Ms. Hempstead and Ms. Morningstar are similarly situated, Ms. Hempstead's allegations deal with disciplinary policies and with physical examinations related to her fitness to return to work after recovering from injuries. Upon returning to work after work-related injuries, Police Chief Harold Gray required Ms. Hempstead to undergo physical and mental examinations that were not required of other employees. (ECF No. 80-2 at 4). Ms. Hempstead had faced disciplinary action from her employers, and she alleges that male officers who committed similar offenses were not disciplined. (*Id.*). She states that two male officers were placed in the detective unit "without competition," but, without more, this is statement is too vague and cursory to draw parallels to Ms. Morningstar's allegations. Therefore, Ms. Hempstead and Ms. Morningstar are not similarly situated.

Finally, the last factor—the nature of the allegations—favors admissibility. Like the plaintiff, Ms. Hempstead alleged gender discrimination and retaliation. Ms. Hempstead states in her EEOC complaint that she was the only female police officer in the department. (ECF No. 80-2 at 4). Similarly, Ms. Morningstar was the first female firefighter at CFD. Viewed broadly, Ms. Hempstead's complaint could be probative of the culture within the Circleville municipal government and the Defendants' motive or intent to keep women out of the fire department. *See Griffin*, 689 F.3d at 600 (extending the Supreme Court's logic from *Sprint* to hold that "other

acts" evidence may be permissible under Federal Rule of Civil Procedure 404(b) because it may be probative of motive or intent to discriminate).

After balancing these factors, the Court finds that it is not necessary to exclude the evidence of Ms. Hempstead's EEOC complaint at this time. In the context of trial, if Ms. Morningstar cannot establish that Circleville's treatment of Ms. Hempstead is tied to the statements or actions of the Defendants, the Court can exclude the evidence at trial. *See e.g.*, *Geiger v. Pfizer, Inc.*, No. 2:06-CV-636, 2009 WL 1026479, at *8-9 (S.D. Ohio Apr. 15, 2009) (Marbley, J.) (denying motion in limine to exclude "me too" evidence but noting that the evidence would be excluded at trial if the plaintiff could not tie it to the defendant's conduct).

### B. Ohio BCI Report Resulting from Criminal Investigation of CFD
### (ECF No. 64)

Defendants move to exclude the report that resulted from the Ohio Attorney General's Office of Bureau of Criminal Investigation's ("BCI") criminal investigation of the Defendants that occurred due to Ms. Morningstar's internal complaints. (ECF No. 64 at 1). Ms. Morningstar objects to keeping the report out of evidence. (ECF No. 82). For the reasons set forth below, the Court admits the report, but with limitations.

Defendants contend that the BCI report is inadmissible as hearsay under Federal Rules of Evidence 801 and 802. Defendants argue that the hearsay exception for public records, Federal Rule of Evidence 803(8), does not apply to the police report, but even if it does, the double hearsay rule, Federal Rule of Evidence 805, requires exclusion of the witness interviews (and summaries thereof) contained in the report. (ECF No. 64 at 3-5). Ms. Morningstar rejoins that because the BCI report contains evidence relevant to her discrimination and retaliation claims, the entire report should be admitted. (ECF No. 82 at 2-3). She further asserts that Defendants

7

could raise any hearsay objections at trial, so the Court ought not exclude purported hearsay until then. (*Id.*).

Four criteria must be satisfied for the Rule 803(8) hearsay exception to apply: "First, the hearsay statement contained in the public document must constitute a factual finding. Second, the factual finding must have resulted from an investigation authorized by law. Third, the declarant must have had first-hand knowledge of the matter asserted. Fourth, the hearsay statement must be trustworthy." *Fraley v. Rockwell Int'l Corp.*, 470 F. Supp. 1264, 1266 (S.D. Ohio 1979). In the Sixth Circuit, courts must evaluate four factors to determine trustworthiness: "(1) the timeliness of the investigation upon which the report is based, (2) the special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems." *Alexander v. CareSource*, 576 F.3d 551, 563 (6th Cir.2009). The Advisory Committee Notes to Rule 803 indicate a presumption of admissibility; the party opposing admission has the burden of proving a lack of trustworthiness. *Conde v. Velsicol Chemical Corp.*, 804 F.Supp. 972, 994 (S.D. Ohio 1992).

The report satisfies the four criteria from *Fraley*. It contains factual findings that resulted from a legally authorized BCI investigation, and the investigators had first-hand knowledge of the witness statements and Circleville policies that were the subject of the investigation. The report also satisfies the *Alexander* criteria for trustworthiness. BCI became involved with the criminal investigation in July 2016, (McIllroy Dep. 18:2-13), and Ms. Morningstar went on administrative leave in December 2015. This is not so long a time period as would diminish the credibility of the investigation. Defendants do not challenge the skill or expertise of BCI or allege that BCI had any problematic motivation. Defendants only contend that some of the witnesses who contributed to the report might not have been credible. The record does not

indicate that BCI held a hearing, but other courts have found public reports to be trustworthy when the lack of a hearing was the only unfavorable factor. *See e.g.*, *Weinstein v. Siemens*, No. 2:07-CV-15000, 2010 WL 4824952, at *5 (E.D. Mich. Nov. 22, 2010) (admitting police report under Rule 803(8) hearsay exception where other factors supported the trustworthiness of the investigation but no hearing occurred); *see also Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978) ("We do not believe that a formal hearing is a Sine qua non of admissibility under Rule 803(8)(C) when other indicia of trustworthiness are present.").

Defendants contend that police reports generally do not fall under Rule 803(8)'s public record exception. (ECF No 64 at 3). This is not correct. Defendants rely on two criminal cases in which courts interpreted the Ohio Rules of Evidence: *Jeffers v. Warden*, No. 2:13-cv-229, 2014 WL 197896, at *4 (S.D. Ohio 2014) and *State v. Leonard*, 818 N.E.2d 229, 258 (Ohio 2004). These cases are inapposite because the Federal Rules of Evidence control here and because this is a civil case. Federal Rule of Evidence 803(8)(A)(ii) dictates that the public records exception does not apply to all aspects of police reports presented as evidence in criminal cases, but in civil cases, police reports that satisfy the *Fraley* factors are generally admissible. Fed. R. Evid. 803(8)(A)(ii)–(iii).

A public report which satisfies all four of the *Fraley* criteria may still be partially or wholly inadmissible, however, if "the factual findings in the public document themselves are based upon hearsay, then the underlying hearsay also must fit within an exception to the general hearsay rule for the public document to be admissible." *Fraley*, 470 F. Supp. at 1267 (internal citations omitted). Here, the BCI report relies on witness statements. The witness statements and summaries thereof are double hearsay under Rule 805 and are not admissible unless another exception applies. *See Baker v. Elcona Homes Corp.*, 588 F.2d 551, 559 (6th Cir. 1978) (noting

in dicta that the statements of a witness to a car accident contained in a police report would not be admissible under FRE 803(8), even though the witness's statements undoubtedly influenced the officer's own admissible factual findings in the report); s*ee also In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 157 (S.D.N.Y. 2009) (finding inadmissible the statements of terrorists in the 9/11 Commission report as double hearsay but admitting other portions of the Commission's report); *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir.2006) (finding inadmissible a police report containing double hearsay). The Court, therefore, finds the BCI report generally admissible under Rule 803(8) but **WITHOLDS RULING** on the admissibility of the specific portions of the BCI report Ms. Morningstar wishes to use until trial, at which time the Court can determine whether such portions contain any inadmissible double hearsay or whether any exception to hearsay applies.

### C. Ms. Morningstar's Pension Benefits
### (ECF No. 65)

Defendants seek to exclude any testimony or other evidence regarding the pension benefits that Ms. Morningstar would have eventually earned if she continued to work for CFD. Specifically, Defendants are concerned with an expert report from Wade Steen, CPA, which calculated the pension benefits that Ms. Morningstar would have received if she retired after 25 years of service. (ECF No. 65 at 1-2). Ms. Morningstar argues that the expert report should be allowed into evidence. (ECF No. 83). For the reasons set forth below, Defendants' Motion is **DENIED**.

Defendants argue that Mr. Steen's expert report is overly speculative and is therefore inadmissible. If truly speculative, unearned pension benefits would not be recoverable, and any evidence of them would be irrelevant to the calculation of compensatory damages. *See Endicott v. Johrendt*, No. 99AP-935, 2000 WL 796576, at *9 (Ohio. Ct. App. June 22, 2000) ("It is

axiomatic that compensatory damages must be shown with certainty, and damages which are merely speculative will not give rise to recovery.").

Here, Mr. Steen's expert report assumes that Ms. Morningstar would have worked at CFD for a total of 25 years before retirement. (ECF No. 65 at 2). This assumption alone is not enough to make the expert report so speculative as to be inadmissible. The expert report identifies the calculations and assumption that Mr. Steen used to estimate Ms. Morningstar's lost pension benefits based on CFD's benefit policies. Defendants will have the opportunity to challenge the calculations and assumptions at trial. At worst, this evidence of pension benefits is of a type which the Supreme Court has termed "shaky but admissible." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). As such, the appropriate means to attack this evidence are "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.; see also Consolidated Rail Corp. v. Grand Trunk Western R. Co.*, 963 F.Supp.2d 722, 733 (E.D. Mich. 2013), aff'd, 607 F. App'x 484 (6th Cir. 2015) (denying defendant's new trial motion where defendant had the opportunity to present alternative calculations of lost profits and to cross-examine all plaintiff's witnesses who provided damages estimates at trial).

Defendants list a variety of eventualities that could undermine the predictive value of this expert report. For example, Ms. Morningstar could leave the CFD early or CFD could change its pension policy. Defendants will have the opportunity to cross-examine Mr. Steen about the effects these hypothetical scenarios would have on his expert report. It is for the jury to decide what amount of pension benefits Ms. Morningstar could have reasonably expected to receive. *See e.g.*, *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1100 (8th Cir. 1982) (directing district court to allow the jury to determine whether defendant would have retained plaintiff as an

employee but for defendant's ADEA violation and, if so, to determine an amount that would "reasonably compensate" the plaintiff for wages and pension benefits that he would have received).

Defendants' reliance on *Reithmiller v. Blue Cross & Blue Shield*, 824 F.2d 510 (6th Cir. 1987) is inapposite. There, the Sixth Circuit merely upheld the district court's dismissal of an ERISA claim under the doctrine of res judicata; a Michigan state court had previously ruled on the same dispute at a bench trial. The state trial judge refused to award damages for the loss of unvested pension benefits. At the bench trial, there was a dispute as to the vesting date. The state trial judge found that the unvested benefits were too speculative, but that finding is not binding here. Here, a reasonable jury might find that Ms. Morningstar could have expected to receive some pension benefits from CFD.

### D. Chief Zingarelli's December 2011 Evidence Collection Incident
### (ECF No. 66)

Defendants seek to exclude any reference to a December 12, 2011 incident involving Chief Zingarelli and the subsequent investigation. Ms. Morningstar objects. (ECF No. 84). For the reasons set forth below, this Motion is **GRANTED**.

On December 12, 2011, CFD and the Circleville Police Department responded to a car crash that had caused a gas leak. Chief Zingarelli was at the scene. While picking up pieces of the vehicle, he also picked up a package of zip ties left on the ground and took them back to the fire station. (ECF No. 66 at 2). A police officer was unhappy that Chief Zingarelli took the zip ties, which were evidence that should have been left at the scene of the crash. The officer brought the incident to the attention of the Chief of Police, but no one brought criminal charges against Chief Zingarelli. (ECF No. 66 at 2). Chief Zingarelli never received any formal

discipline. The only consequence of the incident was that CFD personnel later received training on proper evidence collection. (ECF No. 66 at 2-3).

Any discussion of this incident is excluded as irrelevant under Federal Rule of Evidence 402. Neither Rule 609 nor Rule 405 changes this analysis. Federal Rule of Evidence 609 mandates the admissibility of evidence of a criminal *conviction* under specific circumstances. Rule 609 does not apply here because Chief Zingarelli faced no criminal charges, let alone a conviction. Rule 405 allows evidence of personal character based on specific instances of conduct, but only when that person's "character or character trait is a specific element of a charge, claim, or defense." The December 2011 zip-tie incident is not probative of any of Chief Zingarelli's relevant character traits. This incident related to proper evidence collection techniques is not probative of whether Chief Zingarelli held any discriminatory animus against Ms. Morningstar.

Ms. Morningstar wishes to use this evidence as an example of favoritism toward male employees in the City of Circleville because Chief Zingarelli faced no criminal charges or discipline for his conduct. (ECF No. 84 at 1-2). She believes that city employees, including the police chief and mayor, have afforded special treatment to Chief Zingarelli on multiple unspecified occasions. (*Id.*). Chief Zingarelli, however, was not "similarly situated" to Ms. Morningstar when the Chief of Police chose not to charge him for violating evidence collection policies. The Sixth Circuit applies a three-factor test when determining whether individuals are "similarly situated" for Title VII gender discrimination purposes: the individuals are more likely to be similarly situated if they "[1] dealt with the same supervisor, [2] have been subject to the same standards and [3] have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of

them for it." *Jackson v. VHS Detroit Receiving Hospital, Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir.1992)). Ms. Morningstar does not allege that she faced stricter discipline than her male counterparts – or any discipline at all for that matter. Any potential discipline or criminal charges against Chief Zingarelli would have come from the police department or the mayor directly. No individuals responsible for deciding whether to charge Chief Zingarelli were Ms. Morningstar's supervisor. Therefore, alleged favoritism toward Chief Zingarelli in this context is not probative of Ms. Morningstar's claims and will be excluded as irrelevant under Rule 402.

### E. Ms. Morningstar's Intentional Infliction of Emotional Distress Claim
### (ECF No. 67)

Defendants seek to exclude any reference to Ms. Morningstar's intentional infliction of emotional distress ("IIED") claim against Circleville and the CFD, arguing that Circleville is a "political subdivision" entitled to immunity against this claim under Ohio Revised Code Chapter 2744. (ECF No. 67 at 1, 2, 4). Ms. Morningstar objects. (ECF No. 81). For the reasons that follow, Defendants' Motion is **DENIED**.

At base, this motion raises no evidentiary question. Instead, it raises a merits-based challenge to Ms. Morningstar's IIED claim and therefore should have been brought as a 12(b)(6) motion to dismiss or as a motion for summary judgment. The Sixth Circuit has held that district courts should not consider any "motion in limine [that] is no more than a rephrased summary-judgment motion." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013) (citing *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed.Cir.2012)). In *Louzan*, the district court granted a motion in limine based on its determination that the plaintiff's evidence was insufficient as a matter of law. 718 F.3d at 562. The Sixth Circuit found that summary judgment analysis was necessary in order for the district court to resolve this legal question. *Id.*

14

The Sixth Circuit explained that motions in limine have developed as evidentiary devices to streamline trial proceedings. *Id.* at 561. They are distinct from summary judgment motions, which are designed to eliminate the need for trial entirely where no factfinding is necessary. *Id.* Considering matters that should have been resolved at an earlier stage of litigation allows dissatisfied parties to deprive their opponents of the procedural protections of summary judgment. *Id.* The *Louzon* court thus held that the district court improperly considered non-evidentiary matters on a motion in limine and reversed the order granting the motion. *Id.* at 566.

At summary judgment, neither party addressed whether Ohio law provides Circleville and the CFD with immunity against the IIED claim. (*See* ECF No. 36 at 37-38). Defendants seek to prevent Ms. Morningstar from pursuing her IIED claim at trial. As in *Louzon*, Defendants' "motion does not require any ruling relating to the admissibility of evidence at trial." *Id.* at 562. Therefore, this motion is as an untimely motion for summary judgment and is denied. *See Ohio Oil Gathering Corp. III v. Welding, Inc.*, No. 2:09-CV-782, 2010 WL 5135999, at *3 (S.D. Ohio Dec. 9, 2010) (Defendant's motion is more a motion for judgment on the pleadings or for summary judgment on the second claim of the Complaint than it is a motion *in limine.* The time for filing such dispositive motions has long closed, however, and Defendant cannot evade this Court's summary judgment deadline simply by captioning its dispositive motion in a creative manner.").

### F. Ms. Morningstar's Unemployment Compensation
### (ECF No. 68)

Defendants seek to exclude any evidence regarding Ms. Morningstar's unemployment compensation benefits. (ECF No. 68 at 1). Ms. Morningstar objects to this request. (ECF No. 86). For the reasons set forth below, Defendants' Motion is **GRANTED**.

Defendants argue that evidence of unemployment compensation benefits is not probative of Ms. Morningstar's claims and is therefore irrelevant under Federal Rule of Evidence 401. (ECF No. 68 at 2-3). Defendants point out that employees receive unemployment compensation benefits regardless of whether they have been wrongfully terminated. *See e.g.*, *Blumensaadt v. Std. Prods. Co.*, 744 F.Supp. 160, 163 (N.D. Ohio 1989) (explaining that a former employee's eligibility for Ohio unemployment benefits did not indicate that the employee had been wrongfully discharged under Title VII). Defendants also argue that admission of this evidence would mislead the jury and should be excluded under Rule 403. They express concern that a jury will mistakenly interpret Ms. Morningstar's receipt of unemployment compensation benefits as a sign that her termination was wrongful. (ECF No. 68 at 3-4).

Ms. Morningstar contends that this evidence is probative of her retaliation claim based on her employer's conduct after her termination. She asserts that the Defendants opposed her application for unemployment benefits and thereby engaged in retaliatory conduct against her. Ms. Morningstar relies on *Stezzi v. Citizens Bank of Pennsylvania*, No. 10-4333, 2012 U.S. Dist. LEXIS 143607, at *10 (E.D. Pa. Oct. 4, 2012), in which the Eastern District of Pennsylvania denied the defendant's Rule 12(c) Motion for Judgment on the Pleadings. Citing Third Circuit precedent, the district court found that post-employment conduct could constitute Title VII retaliation if it "negatively affected [the former employee's] future employment opportunities. *Id.* In it's opposition to the unemployment compensation claim, the defendant employer had referred to the claimant as "grossly negligent." *Id.* at *10-11.

Federal district courts in the Sixth Circuit, however, have consistently held that an employer's mere opposition to an unemployment benefits claim does not constitute retaliation under Title VII or analogous state law. *See e.g.*, *Powell v. Honda of Am.*, No. 06-CV-979, 2008

16

WL 2872273, at *2 (S.D. Ohio July 22, 2008) ("[A] former employer's opposition to a request for unemployment benefits is not, as a matter of law, actionable retaliatory misconduct."); *Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 805 (N.D. Ohio 1996) (explaining that opposition to unemployment benefits is not the type of conduct that Ohio lawmakers sought to prevent with anti-retaliation statutes because the state's own administrative process allows employers to oppose unemployment benefits); *Spencer v. CSL Plasma, Inc.*, No. 3:10-CV-00262, 2011 WL 4054715, at *7 (E.D. Ky. Mar. 8, 2017) ("[L]egitimate opposition to an unemployment compensation claim cannot be the basis for a retaliation claim."); *Hatton v. United Parcel Serv.*, No. 05-97-JBC, 2006 WL 1895724, at *3 (E.D. Ky. July 7, 2006) ("An employer may challenge a former employee's application for unemployment benefits without running afoul of anti-retaliation laws".)

Moreover, Ohio places an absolute privilege on information shared in unemployment proceedings because the proceedings are quasi-judicial in nature. *See Baldwin v. Adidas America, Inc.*, No. C2-02-265, 2002 WL 2012562, at *2 (S.D. Ohio, July 29, 2002) (citing *Barilla v. Patella*, 760 N.E.2d 898, 906 (Ohio Ct. App. 2001)). O.R.C. § 4141.21 prohibits information furnished in unemployment compensation proceedings from being presented as evidence in any court proceeding, other than those arising under §§ 4141 (on unemployment compensation) and 5733.42. (on corporate franchise tax credits). For these reasons, Ms. Morningstar's unemployment benefits are irrelevant to her retaliation claim, and her employer's opposition to her claims is not admissible.

### G. Certain Evidence in Support of Discrimination and Retaliation Claims (ECF No. 69)

Defendants seek to exclude any evidence related to the CFD's physical agility tests in 2003 and 2007, the decision not to hire Ms. Morningstar as a firefighter in 2005, Ms.

Morningstar's shift change, and the allegations that co-workers ignored Ms. Morningstar. (ECF No. 69 at 1). Ms. Morningstar objects to the proposed exclusion. (ECF No. 85). For the following reasons, Defendants' Motion is **DENIED**.

Defendants argue that evidence of these findings should be excluded entirely based on the Court's finding at summary judgment. (*Id.* at 2). At summary judgment, the Court found that:

1. The 2003 and 2007 physical agility tests did not constitute adverse employment actions because Ms. Morningstar passed both tests and "did not experience a materially adverse change in her employment because of the agility tests." (ECF No. 36 at 24).

2. CFD's decision not to hire Ms. Morningstar as a full-time employee in 2005 was not evidence of gender discrimination because she was not treated differently than similarly-situated male employees. (ECF No. 36 at 28-29).

3. Ms. Morningstar's shift change and allegation that her co-workers ignored her were not evidence of retaliation. (ECF No. 36 at 36-37).

Despite these findings, these incidents remain relevant to Ms. Morningstar's other claims. At summary judgment, the Court also specifically found that it could consider the following items as evidence of a hostile work environment claim: the 2003 and 2007 agility tests; the decision not to hire Ms. Morningstar as a full-time employee in 2005; and the testimony that Ms. Morningstar's co-workers ignored her. (ECF No. 36 at 17).

The only remain question, therefore, is the relevance of the shift change. The Court finds this evidence is admissible as well. Ms. Morningstar believes that Chief Zingarelli removed her from shift 1 and placed her on shift 3 due to his personal bias or a discriminatory or retaliatory animus. (ECF No. 16-7 at 55; ECF No. 16-2 at 73). Captain Edgington told her that she faced a disadvantage on the promotional test to become a lieutenant because she was not on his shift. (ECF No. 16-7 at 155-56). The Court granted summary judgment to Chief Zingarelli with respect to Ms. Morningstar's gender discrimination, retaliation, hostile work environment, and

18

sexual harassment claims, but this decision was strictly due to Chief Zingarelli's statutory immunity, which does not excuse CFD and Circleville from liability for his actions. (ECF No. 36 at 21); O.R.C. § 2744.03(B). If Ms. Morningstar is able to introduce evidence that Chief Zingarelli had an invidious motive for moving her to a different shift, this evidence would be probative of Ms. Morningstar's gender discrimination, hostile work environment, and sexual harassment claims against Circleville and the CFD. Therefore, this evidence maintains its probative value.

### III. CONCLUSION

For these reasons, the Court **GRANTS** Defendants' motion to exclude evidence regarding the December 2011 incident with Chief Zingarelli (ECF No. 66) and Defendants' motion to exclude any evidence regarding Ms. Morningstar's unemployment compensation benefits (ECF No. 68). The Court **DENIES** Defendants' motion to exclude Ms. Hempstead's EEOC complaint (ECF No. 63), Defendants' motion to exclude Ms. Morningstar's pension benefits (ECF No. 65), Defendants' motion to exclude any reference to Ms. Morningstar's intentional infliction of emotional distress claim (ECF No. 67), and Defendants' motion to exclude any evidence related to the CFD's physical agility tests in 2003 and 2007, the decision not to hire Ms. Morningstar as a firefighter in 2005, Ms. Morningstar's shift change, and the allegations that co-workers ignored Ms. Morningstar (ECF No. 69). Finally, the Court **DENIES** Defendants' request to exclude the BCI report, but **WITHOLDS RULING** on admissibility of specific portions of the report (ECF No. 64).

**IT IS SO ORDERED.**

                                                          s/ Algenon L. Marbley
                                                         **ALGENON L. MARBLEY**
                                                         **UNITED STATES DISTRICT JUDGE**

**DATED: August 6, 2018**